IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-00269-BO

TONYA WATKINS BUTLER,

        Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

**ORDER**

This matter is before the Court on the parties' cross-motions for judgment on the pleadings [D.E. 23, 29]. For the reasons detailed below, plaintiff's motion is GRANTED and defendant's motion is DENIED. The decision of the Commissioner is REMANDED for further consideration.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits March 25, 2011, alleging a disability beginning on April 15, 2010. The claim was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") on June 25, 2013. In a decision dated July 9, 2013, the ALJ found that plaintiff was not disabled. Tr. 52–65. The Appeals Council denied plaintiff's request for review on September 29, 2014, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–6. Plaintiff commenced this action and filed a complaint pursuant to 42 U.S.C. 405(g) on November 19, 2014. [D.E. 1].

## MEDICAL HISTORY

Plaintiff was formerly employed by the Duplin County Sheriff's Office as an administrative assistant. She retired on state disability in 2010 following a fall in an x-ray department of a hospital where she was being treated for headaches. She had a past history of migraine headaches. After the fall, she experienced an increase in headaches as well as neck pain. Plaintiff has been prescribed medications for her headaches and also sought treatment from a pain specialist. Physical therapy was also recommended. As a result of her conditions, plaintiff also alleges that she has experienced anxiety and depression, problems with memory and concentration, and a decrease in her ability to perform activities of daily living. Treatment records note tearfulness, lack of energy, and irritability as well as panic attacks and sleep disturbances.

## DISCUSSION

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the

claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at step four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

After finding that the plaintiff had not engaged in any substantial gainful activity since her alleged onset date at step one, the ALJ determined that plaintiff's conditions of cervicalgia, migraine headaches, anxiety, and depression were severe impairments at step two. Tr. at 54. The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or equaled a listing at step three. *Id.* at 53. The ALJ determined that the plaintiff had an RFC to perform light work with the following exceptions: no frequent pushing, pulling, or reaching with the right arm; must avoid moderate exposure to moving machinery and avoid all exposure to unprotected heights; and can perform simple, routine, repetitive tasks in a low stress job with no production rate or pace work and only occasional interactions with the public. *Id.* at 56. At step four, the ALJ found that plaintiff was unable to perform her past relevant work as an

administrative secretary, legal secretary, or clean-up worker. *Id.* at 63. At step five, the ALJ found that, considering her age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that she was capable of performing, including office helper, motel housekeeper, and route clerk. *Id.* at 64. Thus, the ALJ found that plaintiff was not disabled as of the date of his decision. *Id.*

Here, plaintiff raises several challenges to the ALJ's decision. First she argues that the ALJ erred in assessing her RFC. Specifically, plaintiff contends that the ALJ failed to account for her moderate limitations in concentration, persistence, or pace and by using boilerplate language in making the credibility determination, both of which are inconsistent with the holding in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), a decision issued after the ALJ's determination.

In *Mascio*, the Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, or pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Mascio*, 780 F.3d at 638 (quotation omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

In this case, the ALJ found that plaintiff is limited to performing simple, routine, repetitive tasks in a low stress job with no production rate or pace work and only occasional

4

interactions with the public. Tr. at 56. Other courts, including this court, have held that such limitations fail to sufficiently address a claimant's moderate limitations in concentration, persistence, or pace. *See Desilets v. Colvin*, No. 2:14-cv-1693, 2015 WL 5691514, at *5 (D.S.C. Sep. 28, 2015) (remanding matter because RFC limiting claimant to "performing simple, repetitive tasks that are low stress and require no major decision-making or changes in the work setting" did not sufficiently address the claimant's moderate limitations in concentration, persistence, or pace); *Jones v. Colvin*, No. 4:14-cv-200, 2015 WL4773542, at *6 (E.D.N.C. Aug. 13, 2015) (remanding matter where hypothetical question to the VE contemplating an individual limited to simple, routine, repetitive tasks, who should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations because such a limitation did not adequately address a moderate limitation in concentration, persistence, or pace); *Scruggs v. Colvin*, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence, or pace). Other courts, however, have found such limitations appropriate for moderate limitations in this functional area. *See Rayman v. Comm'r, S.S.A.*, No. 14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) (claimant's moderate limitations in concentration, persistence, or pace reflected in RFC that limited him to unskilled work in a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards, and only occasional contact with the public, supervisors, and co-workers and thus did not warrant remand under *Mascio*); *Gair v. Comm's of Soc. Sec. Admin.*, No. 14-3652, 2015 WL 5774982, at *2 (D. Md. Sep. 28, 2015) (ALJ properly accounted for claimant's moderate limitations in concentration, persistence, or pace by limiting

5

RFC to simple, routine, repetitive tasks in a low stress environment, defined as one with no strict production quotas, with only occasional and superficial interactions); *Linares v. Colvin*, No. 5:14–cv–120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* where ALJ limited claimant to simple, routine, repetitive tasks but also limited her to a stable work environment at nonproduction pace with only occasional public contact because the nonproduction pace addressed her limitations in pace and the stable work environment with only occasional public contact addressed her limitation in concentration and persistence).

Given the evidence and the lack of consensus among the district courts on this issue, the court cannot conclude that the RFC sufficiently accounted for plaintiff's difficulties in maintaining concentration, persistence, or pace. Although the ALJ's findings at step three may not require any additional limitations in this functional area, his decision fails to sufficiently explain how plaintiff's moderate limitations in concentration, persistence, or pace are reflected in the RFC and in the hypothetical questions so as to allow the court to conduct meaningful review. Accordingly, remand for further consideration of how plaintiff's limitations in maintaining concentration, persistence, or pace impact her RFC, if at all, is appropriate.

Plaintiff also challenges the ALJ's credibility determination. Plaintiff points out that the ALJ incorrectly stated that could prepare meals, do housework, and do puzzles. She contends that the evidence of record actually reflects that she used to be able to do these things but is no longer able to now. Here, the ALJ's credibility determination is supported by substantial evidence.

An ALJ's credibility determination is generally entitled to great deference. *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). Plaintiff's activities of daily living were one of several considerations upon which the ALJ based his credibility determination. The ALJ noted:

that although plaintiff claimed constant pain, her exams were essentially benign and she appeared in no acute distress; her treatment was generally conservative and successful in controlling her symptoms; neither her claims of dizziness nor her need to use a cane were reflected in the medical record; she had a history of non-compliance,[1] including missing a July 2010 follow-up appointment with neurologist Dr. Timothy Collins, failing to pursue therapy for her mental health issues as recommended by her treating provider, and missing multiple physical therapy appointments; although she stated she had problems with memory and concentration, Dr. Craig Farmer noted that she was able to remember two out of three unrelated things after a five minute delay and that she provided a concise past history, suggesting adequate memory; and the medical record contained no evidence of muscle atrophy, strength deficits, or muscle spasms, which are reliable indicators of long-term pain.

Although boilerplate language was used, the ALJ's decision reflects a well-reasoned assessment of plaintiff's credibility made in accordance with the regulatory framework and based upon the ALJ's consideration of the entire record, including the objective medical evidence, plaintiff's own statements about her symptoms, and information provided by medical sources and others about plaintiff's symptoms. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (requiring credibility assessments be based upon the entire record and contain specific reasons for the ALJ's credibility findings). Given the evidence of record, it would be improper for this court to second-guess the credibility determination made by the ALJ.

Next, plaintiff challenges the ALJ's failure to discuss the North Carolina Retirement Board's finding warrants remand. The defendant contends that the North Carolina disability

---

[1] The ALJ noted that plaintiff failed to have an MRI as recommended in June 2010. AS plaintiff points out, she did, in fact, have the MRI. However, inasmuch as she missed other appointments, and because the ALJ evaluated her credibility on additional grounds, any error in stating that she failed to get the MRI is harmless.

7

finding is sufficiently different from a finding of disability by the SSA such that any failure of the ALJ to discuss it is harmless error.

As provided at 20 C.F.R. § 404.1504 and further explained in Social Security Ruling ("SSR") 06–03p, "a determination made by another agency that [the claimant is] disabled or blind is not binding on" the Social Security Administration. 20 C.F.R. § 404.1504. Rather, "the ultimate responsibility for determining whether an individual is disabled under Social Security law rests with the Commissioner." SSR 06–03p.

However, the Court of Appeals for the Fourth Circuit issued a decision in *Bird v. Commissioner of Social Security,* which addressed the value of disability findings by other agencies. *Bird*, 699 F.3d 337 (4th Cir. 2012). The Fourth Circuit noted that while not binding on the SSA, "another agency's disability determination 'cannot be ignored and must be considered.'" *Bird*, 699 F.3d at 343. The Fourth Circuit concluded that "in making a disability determination, the SSA must give substantial weight to a VA disability rating," and "an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." *Id.*

Plaintiff was found totally and permanently disabled by the North Carolina Department of State Treasurer, Retirement Systems Division as of December 12, 2010. It approved her application for disability retirement benefits from the Local Governmental Employees' Retirement System ("LGERS") based on a letter from her treating provider, Melvin James, who issued a statement that plaintiff is unable to work. As defendant points out, this disability finding is not deserving of substantial weight for several reasons. First, the LGERS employs different standards for finding disability than the SSA. Whereas the former requires only a physician's statement of total and permanent disability, this is insufficient for a finding of disability by the

8

SSA, which considers additional factors in a five-step analysis to determine disability. Moreover, a finding of disability is one reserved to the Commissioner, not a physician. Additionally, the ALJ weighed James' statement, and afforded it little weight. Consequently, as it formed the basis of the North Carolina Department of Treasury's finding of disability, the ALJ would likely have similarly found it deserving of little weight. Finally, although LGERS addresses whether a claimant can perform her past work, which the ALJ addressed at step four, the SSA evaluates disability on a claimant's inability to perform any work in the national economy.

Given these differences between the standards for finding disability under the two programs, any failure by the ALJ to discuss or weigh the North Carolina Department of Treasury finding that plaintiff was entitled to disability retirement benefits was harmless because it could not have reasonably changed the outcome of the disability determination herein.

Plaintiff also contends that the ALJ erred in failing to find that she was disabled under Listings 1.04 and 12.07. The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but any gainful activity at all. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or equal a Listing, the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a Listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); see SSR 83–19, 1983 WL 31248, at *23 (1983).

Plaintiff's argument is misplaced. First, the ALJ did, in fact, discuss Listing 1.04 and noted that the medical evidence of record failed to support a finding that she met the criteria of that Listing. In February 2010, Dr. Francis Pecoraro noted that plaintiff had possible degenerative changes in her cervical spine that may account for her headaches. In January 2014, after the ALJ's decision, based on an MRI, Dr. Pecoraro opined that she had a disc protrusion at

C4-5 and bilateral upper extremity nerve root pain. However, the record is void of a diagnosis of nerve root compression or notation of sensory or reflex loss as required for Listing 1.04.

Plaintiff also argues she meets Listing 12.07 (Somatoform disorder), which the ALJ did not discuss. There is only one notation of this condition in the record—a notation by a consulting examiner that noted it was a "provisional" assessment—is not a certain diagnosis. Moreover, Listing 12.07 has identical criteria to Listings 12.04 and 12.06, which were discussed in the ALJ's decision. As the ALJ found that the evidence did not support a finding that plaintiff met the criteria for those Listings, an error in failing to also consider her conditions under 12.07 would be harmless error.

Finally, plaintiff challenges the weight assigned to the opinions of her treating provider, Melvin James, particularly as to the consideration of Global Assessment of Functioning ("GAF") scores. First, it bears noting that GAF scores are merely a "snapshot of functioning at any given moment." *Powell v. Astrue*, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013) (citation omitted). As such, they may not be 'indicative of [a claimant's] long term level of functioning." *Parker v. Astrue*, 664 F. Supp. 2d 544, 557 (D.S.C. 2009). Given the questionable probative value of GAF scores, it unsurprising that courts have concluded that "'the failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination.'" *Paris v. Colvin*, 7:12–CV–00596, 2014 WL 534057 (W.D. Va. Feb. 10, 2014) (internal alterations omitted) (quoting *Love v. Astrue*, 3:11-cv-014, 2011 WL 4899989, at *5 (W.D.N.C. Sept. 6, 2011)).

As a board certified advanced professional registered nurse, Mr. James is not an "acceptable medical source" but an "other source" whose assessments are to be evaluated

10

regarding impairment severity and functional limitations.[2] *See* 20 C.F.R. § 404.1513(d)(1). Although James' assessments were subsequently approved by physicians who qualify as "acceptable medical sources," the ALJ afforded these opinions little weight because they were not supported by the evidence or by plaintiff's testimony. Tr. at 61. James assigned GAF scores ranging from 45 to 50, indicative of "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV") 34 (5th ed. 2013). However, James' treatment records reflect that plaintiff was doing well and that she was stable. Tr. at 61. At her last three visits to James, plaintiff expressed no concerns, stated that she was doing well, and reported that medications were working. Such entries in the record undermine the GAF scores James assigned to plaintiff and provide a basis for affording his assessments less weight.

Additionally, the treatment records support Dr. Farmer's GAF score of 65, which "indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV 34. The ALJ gave this consulting examiner's assessment great weight

---

[2] SSR 06–03p addresses the significance of the distinction between "acceptable medical sources" and "other sources" as follows:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable medical sources" can give us medical opinions. Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 [C.F.R. §§ ] 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.

11

because the record as a whole supported his findings that plaintiff could perform simple, routine, repetitive tasks and that she was capable of understanding, retaining, and following instructions. Tr. at 61.

Given the questionable value of GAF scores generally and because the ALJ's consideration of James' assessments was supported by substantial evidence, this issue does not form a basis for remand.

Remand, rather than reversal, is required when the ALJ fails to explain his reasoning and there is ambivalence in the medical record, precluding a court from "meaningful review." *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013) (citing *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012)). On remand, the ALJ is to properly evaluate plaintiff's moderate limitation in her ability to maintain concentration, persistence and pace as it impacts her RFC, as required by *Mascio*.

## CONCLUSION

For the foregoing reasons, plaintiff's motion is GRANTED and defendant's motion is DENIED. The decision of the Commissioner is REMANDED for further consideration.

SO ORDERED.

This ___4___ day of March, 2016.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE